as upon the estate in the hands of executors. But by getting that to which he obviously was not entitled he did not secure a preference over a lien, the validity of which was not questioned, to which no issue raised by the pleadings related, which was nowhere referred to, and which plainly was not in the mind of any of the parties to the stipulation. That no one had it in mind is conclusively shown by the fact that the judgment provided that the said William H. F. Doerr was to have any surplus arising after the payment "in the order of priority above fixed" of the claims of the respondent and the said Findlay. If a trust could be impressed upon real estate, as was attempted to be done by that judgment, the trustee, whoever he was (the judgment failed to designate one), would have to take subject to the liens upon the real estate.

The appellant, in fact, had no interest in any issues raised by the pleadings. It was nominally a defendant because there was a dispute over the ownership of some of its capital stock. Being a party to the record, its attorneys signed the consent to the entry of the judgment, but, so far as it was concerned, that was a mere formality, and, even if its attorneys had the power to agree to the subordination of its lien to the claim involved in the suit, the judgment should not be construed as having that effect in the absence of express provisions requiring that construction. As no question of fact is in dispute, there is no occasion for sending the case back to the referee.

The order, in so far as appealed from, should be reversed, with $10 costs and disbursements, the exceptions to the referee's report should be sustained, and the final order should be modified, so as to provide for the payment of one-third of the surplus money, representing the interest of the said William H. F. Doerr to the appellant, Fiss, Doerr & Carroll Horse Company. All concur.

---

(71 Misc. Rep. 163.)

## In re KANE.

(Supreme Court, Special Term, Kings County.  March, 1911.)

1. ELECTIONS (§ 51*)—APPOINTMENT OF ELECTION COMMISSIONER—POWERS OF MAYOR.

   The mayor of New York, in appointing a commissioner of elections, cannot be confined to a single person nominated under Election Law (Consol. Laws 1909, c. 17) § 194.

   [Ed. Note.—For other cases, see Elections, Dec. Dig. § 51.*]

2. ELECTIONS (§ 47*)—COMMISSIONER OF ELECTIONS—CONSTITUTIONAL LAW.

   Election Law (Consol. Laws 1909, c. 17) § 194, relating to the appointment of a commissioner of elections, which contemplates the nomination of a single candidate only and destroys the power of selection of the appointing power, is in violation of Const. art. 10, § 2, requiring all offices to be filled either by the electors or some public official or board.

   [Ed. Note.—For other cases, see Elections, Dec. Dig. § 47.*]

3. ELECTIONS (§ 51*)—COMMISSIONER OF ELECTIONS—APPOINTMENT.

   Where the Legislature has directed the nomination for the appointment of a commissioner of election, so that one person only is nominated, the

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

mayor's power of selection is thereby destroyed, and the mayor may appoint such commissioner without regard to the nomination.

[Ed. Note.—For other cases, see Elections, Dec. Dig. § 51.*]

In the matter of the application of James Kane for a peremptory writ of mandamus.    Motion denied.

Affirmed, 129 N. Y. Supp. 280.

Charles Kelby, for relator.
Archibald R. Watson, Corp. Counsel, for mayor.

MAREAN, J.    [1] This application presents but one question, whether the mayor was bound to appoint the relator commissioner of election; he having been nominated pursuant to section 194 of the election law.    The validity of the appointment actually made in the relator's stead is not involved, except as it would be affected by a determination in the affirmative of the question stated.    I am not able to assent to the relator's contention that the election law by itself commands the appointment of the nominees of the political parties.    If the Legislature had such intent, it would not have been left to uncertain inference.

[2] But, however that may be, such enactment, whether in plain terms or by inference, would be in defiance of section 2 of article 10 of the Constitution, which requires offices to be filled either by the electors or by some public officer or board.    See People ex rel. Balcom v. Mosher, 163 N. Y. 32, 57 N. E. 88, 79 Am. St. Rep. 552.

[3] The relator contends, further, that section 6 of article 2 of the Constitution requires the nominees of the political parties to be appointed.    Without deciding that commissioners of election are within the purview of that section, let it be assumed.    That section requires, first, equal representation of the two dominant political parties in the several boards there referred to.    It then proceeds as follows:

"All such boards shall be appointed or elected in such manner and upon the nomination of such representatives of said parties respectively as the Legislature may direct."

The Legislature has directed the appointment, not election, of commissioners, of election, and has imposed the duty of appointment upon the mayor.    I think the provision in question of the Constitution unmistakably requires appointments to be made upon the nomination by some party representative, leaving it to the Legislature only to say what representative.    If the language of the Constitution had been "upon *such nomination* as the Legislature may direct," perhaps the Legislature would have discretion to dispense with nomination altogether, and to provide for appointment without nomination; but the obvious meaning is otherwise.    The language is, "All such boards * * * shall be appointed * * * *upon the nomination* of such representatives of said parties as the Legislature may direct," leaving to the Legislature only the naming of the representative by whom the nomination should be made.    There is no room here for interpretation; and, even if there were, it would still be easy to read, in the

whole provision, an intent to leave the question of political qualification to some party authority.

But the office of commissioner of elections is a public office of power and importance, in which the people generally are interested. It could never have been intended that the definite selection of such public officer should be left to any political party, or to any power other than the electorate, or some public officer or board. There are other important qualifications requisite for public office, besides that of political affiliation. Reverting to People ex rel. Balcom v. Mosher, supra, it will be noted that the *fitness in all respects* of civil service candidates who have secured a place on the eligible list has been determined beforehand and certified by public authority in the manner provided by law, and the appointing power in that case had no question of fitness to pass upon. But, even there, the appointing power was held to have a right of selection. In this case the mayor is the sole judge of the qualifications of the candidate, other than the mere political qualification; and he is not, therefore, bound to appoint any candidate recommended to him, if he regards him unfit, even if a list of a dozen were nominated.

If it be suggested that the mayor might never approve any nominee of the political parties, however numerous the list, it is sufficient to point out that appointments by the President by and with the consent of the Senate are subject to a similar suggestion. It cannot be presumed that the mayor will be unreasonable. The difficulty in this case is that the Legislature has devised a too narrow scheme of nomination.

It is not necessary to pass upon the question whether the case is, as I have assumed, within the purview of article 2, § 6, of the Constitution; nor upon the question whether, there being no provision of law for further nomination, and no further nomination in fact, the mayor, having the duty of appointment to an empty office which the public interest requires to be filled, may not fill it without nomination. I think he may, provided his selection has in fact the necessary qualification. The necessity of the case indicates it. Where no private right is involved, the public service is not to be crippled because the Legislature has failed in its duty to provide a larger scheme of nomination.

The case of Matter of Duell v. Glynn, 191 N. Y. 357, 84 N. E. 282, cited by the relator, where the comptroller, upon the recommendation of the surrogate, was authorized to appoint, etc., differs from this case in the circumstance that both were public officers, and the court treated them as jointly constituting the appointing power. In this case the mayor is the sole appointing power.

The motion is denied.